IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM C., A Minor, By and Through His Parents, Dennis C. And Maura C., of Scranton, Pa., Dennis C. and Maura C. Adults, Individually and on their Own Behalf, of Scranton, Pa. | : : : : : | |
| Plaintiffs | : | |
| | : | |
| v. | : | 3:CV-07-0532 |
| | : | (JUDGE VANASKIE) |
| SCRANTON SCHOOL DISTRICT, NORTHEASTERN EDUCATION INTERMEDIATE UNIT, LOURDESMONT SCHOOL, | : : : : | |
| Defendants | : | |

MEMORANDUM

Plaintiff Adam C. and his parents, Dennis C. and Maura C., brought this action

against Defendants Scranton School District, Northeastern Educational Intermediate Unit

("NEIU"), and Lourdesmont School ("Lourdesmont") asserting seven claims for relief arising

out of a physical assault on Adam C. by another adolescent while Adam C. was at

Lourdesmont.  Presently before this Court are Motions to Dismiss Plaintiffs' Amended

Complaint filed on behalf of each Defendant. (Dkt. Entries 47, 49, and 53.)  For the reasons

that follow, the Motions to Dismiss will be granted in part and denied in part.

I.      BACKGROUND

Adam C. began attending school in the Scranton School District in the first grade

during the 1995-96 school year.  (Dkt. Entry 46, ¶ 38.)  At all times relevant to this matter,

Plaintiffs resided in the Scranton School District.  (Id. at ¶ 8.)  As a child with a Serious

Emotional Disturbance as defined under the Individuals with Disabilities in Education Act

("IDEA") and its regulations, Adam is a student who is eligible for special education

services.  (Id. at ¶ 2.)

During the 1999-2000 school year, Adam was placed in the juvenile court system for

conduct occurring in the Scranton School District.  (Id. at ¶ 40.)  On or around September

2000, Adam returned to the Scranton School District.  In February of 2002, however, Adam

was again moved into juvenile placement due to manifestations of his disability.  (Id. at ¶ 41,

¶  44.)

In November 2003, Adam was discharged from juvenile placement. (Id. at ¶ 4, ¶ 41.)

At that time, the Scranton School District did not permit Adam to return, and instead

provided Adam with home education instruction. (Id. at ¶ 46.)

During home instruction, the Scranton School District determined that it did not have

an appropriate educational program or placement for Adam, and thus contracted with NEIU

to provide Adam with educational placement and programming. (Id. ¶ 4.)  NEIU receives

various sources of federal funding and provided special education services to Adam.  (Id. at

¶ 10.)  Upon placement at NEIU, an Individualized Educational Program ("IEP") was

completed on May 18, 2004.  (Id. at ¶ 43.)

Beginning in April or May of 2004, Adam's parents obtained a placement for Adam

at Lourdesmont.  The Scranton School District supported the placement by offering Adam

an IEP and Notice of Recommended Educational Placement.[1]  (Id. at ¶ 5, ¶ 12, ¶ 46.)

Pursuant to an agreement between Lourdesmont, the Scranton School District, and/or

NEIU, "Lourdesmont agreed to implement and provide special education services pursuant

to Adam's IEP."[2]  (Id. at ¶ 12.)

    In accordance with the alleged agreement, Adam was placed in Lourdesmont. About

one year later, or around April 29, 2005, an emotionally disturbed student physically

assaulted Adam.  (Id. at ¶ 47.)  This attack resulted in a brain aneurism, a brain hematoma,

a fractured cheekbone, and ocular damage.  (Id. at ¶ 6, ¶ 47.)  This physical assault forms

---

[1] There is a discrepancy in dates in Plaintiffs' Amended Complaint.  Paragraph five states that the Scranton School District funded placement for Adam at Lourdesmont beginning in April, 2004, while paragraph twelve states that "Adam was enrolled [at Lourdesmont] via an IEP and NOREP offered by the remaining Defendants beginning May of 2004." (Dkt. Entry 46,  ¶ 5, ¶ 12.)

[2] Although Plaintiffs' Amended Complaint asserts that Lourdesmount agreed to provide educational services, Plaintiffs' Reply Brief to Defendant NEIU's motion to dismiss asserts that Adam was "attending school [at Lourdesmount] pursuant to an IEP offered by the District and receiving educational services according to his IEP from the NEIU." (Dkt. Entry 51, at 6.)  Plaintiffs Reply Brief further asserts that "[p]ursuant to an agreement with the District, and having failed to offer any other appropriate placement to Adam, the NEIU provided educational services to Adam under his IEP while at Lourdesmont." (Id. at 9.)  As support for this latter assertion, Plaintiffs cite paragraph twelve of the Amended Complaint. Paragraph twelve states, "[t]he Defendant Lourdesmont School . . . was responsible for providing FAPE to Adam. . . . Lourdesmont agreed to implement and provide special education services pursuant to Adam's IEP." (Dkt. Entry 46, ¶ 12.)  Since this Court must accept as true the allegations in the Amended Complaint, it will be assumed that Lourdesmont agreed to implement and provide special education services to Adam, as stated in paragraph twelve of Plaintiffs' Amended Complaint.

the predicate for this litigation, which asserts violations of the substantive and procedural requirements of the IDEA.

Plaintiffs requested a Special Education Due Process Hearing, pursuant to 34 C.F.R. §§ 300.507(a) and 300.508, seeking non-compensatory damages.  (Id. at ¶ 7, ¶ 48.) Plaintiffs and the Scranton School District resolved the dispute, via settlement, without the need to proceed to a hearing.  (Id. at ¶ 7.)  The settlement provided for "compensatory education hours for the purpose of compensating Adam for the educational services he should have, but did not, receive," but, preserved Plaintiffs' right to pursue compensatory damages.  (Id. at ¶ 7, ¶ 48.)

Plaintiffs instituted this action on March 20, 2007.  (Dkt. Entry 1.)  Throughout the fall of 2007, Defendants each moved for Judgments on the Pleadings.  (Dkt. Entry 18, 27, 34.) On November 30, 2007, this Court ordered Plaintiffs to file an amended complaint on or before December 21, 2007.  (Dkt. Entry 40.)  Plaintiffs filed a Motion for Leave to File on December 21, 2007, (Dkt. Entry 44), which this Court granted (Dkt. Entry 45), and Plaintiffs' Amended Complaint was filed on December 28, 2007.  (Dkt. Entry 46.)

Plaintiffs' Amended Complaint contains seven (7) claims.  Count I alleges violations of the IDEA, 20 U.S.C. § 1400, et seq., and section 504 of the Rehabilitation Act, 29 U.S.C.

4

§ 794(a) ("Section 504").[3] (Dkt Entry 46, ¶ 49 - ¶ 52.)  The second, third and fourth claims, directed against all Defendants, are brought under 42 U.S.C. § 1983.  Count two is based on a state created danger and special relationship theory of liability.  (Dkt. Entry 46, ¶ 53 - ¶ 58.)  Count three asserts a violation of Adam's Fourteenth Amendment due process right to bodily integrity and freedom from assault.  (Id. at ¶ 59 - ¶ 60.)  Count four asserts a violation of Adam's Fourteenth Amendment right to equal protection.  (Id. at ¶ 61 - ¶ 62.)  The fifth claim seeks redress against Defendant Lourdesmont on a negligence theory.  (Id. at ¶ 63 - ¶ 66.)  The sixth claim for relief is asserted against all Defendants and alleges a breach of contract, stemming from a failure to provide Adam with a free appropriate public education ("FAPE").  (Id. at ¶ 67- ¶ 71.)  Claim seven seeks redress from all Defendants for Plaintiffs Dennis C. and Maura C.'s loss of consortium.  (Id. at ¶ 72- ¶ 74.)  The Plaintiffs seek relief in the form of monetary damages, declaratory relief, and reasonable attorneys fees.  (Id. at ¶ 75.)

Defendants' motions to dismiss challenge Plaintiffs' claims under the IDEA and Section 504 on jurisdictional grounds.  Defendants attack Plaintiffs' other claims as not legally viable.

---

[3]This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law.  Additionally, this Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(3)(A), which provides that "district courts of the United States shall have jurisdiction of actions brought under [section 1415] without regard to the amount in controversy."

II.      DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. Vicky M. v. Ne. Educ. Intermediate Unit 19, 486 F. Supp. 2d 437, 450 (M.D. Pa. 2007) (citing Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)).  "In reviewing a facial attack, a court must consider the allegations of the complaint as true, making all reasonable inferences in plaintiff's favor." Barrister v. Wendy's Int'l, No. Civ. A. 92-7262, 1993 WL 293896, at *3 (E.D. Pa. July 30, 1993) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  The plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991), cert. denied, 501 U.S. 1222 (1991);  Donio v. United States, 746 F. Supp. 500, 504 (D.N.J. 1990) (citing Gibbs v. Buick, 307 U.S. 66, 72 (1939);  Mortensen, 549 F.2d at 891).

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true.  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential

elements of the cause of action." Id.

The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). As a result of Twombly, Plaintiffs must now nudge their claims "across the line from conceivable to plausible." Id. To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient enough "to raise a right to relief above a speculative level." Id. Even in light of this potentially more demanding standard for stating a viable cause of action, the appropriate inquiry on a motion to dismiss

remains "only whether [plaintiff is] entitled to offer evidence to support [his or her] claims," Langford, 235 F.3d at 847, and not whether a plaintiff will prevail or is likely to prevail on the merits.

## B.  The IDEA and Section 504 Claims

Count I of the Plaintiffs' Amended Complaint asserts that Adam's right to a free appropriate public education ("FAPE"), under both the IDEA and Section 504, was violated by the Defendants' failure "to provide Adam with a safe and appropriate educational environment in which he would be able to make meaningful education progress consistent with his ability," and "to provide Adam . . . appropriate educational evaluations and Individualized Education Programs." (Dkt. Entry 46, ¶¶  50 - 52.)  Defendants assert that Count I is barred under Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, and in addition assert that relief in the form of compensatory damages is not available under the IDEA.  (Dkt. Entry 47, 49, 53.)  Defendant Lourdesmont additionally argues that Adam C. was not a student at Lourdesmont and, therefore, the IDEA and Section 504 are not applicable to it.

The Defendants' jurisdictional claim is based on Plaintiffs' failure to exhaust administrative remedies.  Since the failure to exhaust administrative remedies is "jurisdictional in nature," it will be reviewed under the Rule 12(b)(1) standard.  W.B. v. Matula, 67 F.3d 484, 493 (3rd Cir. 1995), overruled on other grounds by, A.W. v. Jersey

City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).

The IDEA was created to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by [State or local educational] agencies." 20 U.S.C. § 1415(a). A FAPE is implemented primarily through the creation of an IEP, which "consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Vicky M., 486 F. Supp. 2d at 452 (quoting Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988)).

Section 504 of the Rehabilitation Act provides many of the same protections as the IDEA. This statute, however, is cast in negative terms. See Matula, 67 F.3d at 492. Section 504 bars federally funded entities from discriminating on the basis of a disability.[4] Our Court of Appeals has found there to be few, if any, differences between the affirmative duty in the IDEA and Section 504's negative prohibition. "[T]he regulations implementing § 504 adopt the IDEA language, requiring that schools which receive or benefit from federal financial assistance 'shall provide a free appropriate public education to each qualified

---

[4] Section 504(a) provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

handicapped person who is in the recipient's jurisdiction.'" Id. (citing 34 C.F.R. § 104.33(a)).

"Violations of section 504 may be redressed through section 505(a)(2), which permits plaintiffs to invoke '[t]he remedies, procedures and rights' . . . of Title VI, a title which includes no exhaustion requirements." Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 281 (3rd Cir. 1996) (citing 29 U.S.C. § 794a(a)(2)).  Although Title VI includes no exhaustion requirement, the IDEA's exhaustion requirement, in section 1415(l), does apply when relief is sought under the Rehabilitation Act.  Id. at 282.  Ascertainment of the applicability of the  IDEA exhaustion requirement to the circumstances presented here will thus be determinative for both the IDEA and Section 504 claims.

"Before a plaintiff can bring a claim in federal court for an IDEA violation . . . he must exhaust his administrative remedies, including, in Pennsylvania, a local due process hearing and an appeal to the state educational agency." Vicky M., 486 F. Supp. 2d at 452.  A party dissatisfied with the state administrative hearing may then bring an IDEA claim in state or federal court.  20 U.S.C. § 1415(i)(2)(A).

Exhaustion under the IDEA is excused if resorting to such procedures would be "futile or inadequate." Matula, 67 F.3d at 495, overruled on other grounds by, A.W., 486 F.3d 791.  Matula held that "where the relief sought in a civil action is not available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused." Id. at 496.  Damages are unavailable in an IDEA

administrative proceeding.  Id.; Vicky M., 486 F. Supp. 2d at 453.

Exhaustion is also excused where pursuit of administrative remedies would serve no meaningful purpose.  Of course, a principal reason for the exhaustion requirement is "to allow the administrative body with the relevant expertise to create an evidentiary record prior to judicial review."  Falzett v. Pocono Mountain Sch. Dist., 150 F. Supp. 2d 699, 704 (M.D. Pa. 2001).  Thus, for instance, "[w]hile a challenge to the contents of an IEP would require exhaustion of administrative remedies – since school administrators are in the best position to establish appropriate educational programs – exhaustion of administrative remedies when a plaintiff is challenging only a failure to implement an IEP would prove fruitless." Vicky M., 486 F. Supp. 2d at 454 (citing Joseph M. ex rel. Kimberly F. v. Southeast Delco Sch. Dist., No. Civ. A. 99-4645, 2001 WL 283154, at *7 (E.D. Pa. Mar. 19, 2001)).  When the implementation, as opposed to the content, of an IEP is at issue, a factual record may be "adequately developed through standard discovery procedures." Id. at 455.  In cases seeking only monetary damages, exhaustion has been required only when IDEA eligibility was unresolved.  Id. at 454 (citing Blanck v. Exeter Sch. Dist., No. Civ.A 01-1402, 2002 WL 31247983, at *2-*3 (E.D. Pa Oct. 2, 2002); Lindsley ex rel. Kolodziejczack v. Girard Sch. Dist., 213 F. Supp. 2d 523, 535 (W.D. Pa. 2002)).

Defendants do not dispute that Adam is a child with Serious Emotional Disturbance, which qualifies him for protection under Section 504 and the IDEA.  The relief requested in

this litigation – compensatory damages – is not available through an IDEA administrative

process.  Moreover, as Adam's IDEA eligibility is not at issue, the administrative hearing

process has no meaningful application here; a factual record may be developed through the

standard discovery procedures.  See Vicky M., 486 F. Supp. 2d at 455.  Thus, Plaintiffs'

claim falls under the implementation exception to the exhaustion requirement.  See Matula,

67 F.3d at 496.  Accordingly, Defendants' Motion to Dismiss Count I under Rule 12(b)(1) will

be denied as to both the IDEA and Section 504 claim.

Defendants also argue that Count I should be dismissed to the extent that Plaintiffs

claim that a violation of the IDEA entitles them to relief in the form of compensatory

damages for the injuries sustained by Adam.  The IDEA provides that in a civil action, a

court "shall grant such relief as the court determines is appropriate."  20 U.S.C. §

1415(i)(2)(C)(iii).  The Court of Appeals for the Third Circuit has not yet determined the

availability of compensatory damages in IDEA cases.  Bucks County Dep't of Mental Health/

Mental Retardation v. Pennsylvania, 379 F.3d 61, 68 n.5 (3d Cir. 2004) ("We have not

settled whether damages are recoverable in an action arising solely under IDEA.").

Although our Court of Appeals has not specifically addressed this issue, other

Courts of Appeals "have held that compensatory and punitive damages – as opposed to

equitable remedies, such as reimbursement or other restitution – are not available in actions

brought directly under the IDEA."  Ortega v. Bibb County Sch. Dist., 397 F.3d 1321, 1325-

26 (11th Cir. 2005);  Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 125 (1st Cir. 2003);

Polera v. Bd of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483-86 (2d

Cir. 2002);  Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999);  Sellers

by Sellers v. School Cd., 141 F.3d 524, 526-27 (4th Cir. 1998);  Charlie F. by Neil F. v.

Board of Educ., 98 F.3d 989, 991 (7th Cir. 1996);  Heidemann v. Rother, 84 F.3d 1021,

1033 (8th Cir. 1996)).   As explained in Nieves-Marquez, the rationale for these decisions is

that "IDEA's primary purpose is to ensure FAPE, not to serve as a tort-like mechanism for

compensating personal injury."[5]

District Judges in the Third Circuit have found the reasoning of these appellate

courts persuasive, and have also dismissed compensatory damage claims brought under

the IDEA.  See, e.g., C.J.G. v. Scranton Sch. Dist., No. 3:07-CV-1314, 2007 WL 4269816,

*8 (M.D. Pa. Dec. 3, 2007); Brandon v. Chichester Sch. Dist., No. 06-4687, 2007 WL

2155722, at *3 (E.D. Pa. July 25, 2007) ("The Court agrees with the overwhelming weight of

---

[5]In  Matula, the court noted that it could "discern nothing in the text or history
suggesting that relief under IDEA is limited in any way, and certainly no 'clear direction'
sufficient to rebut the presumption that all relief is available."  Matula, 67 F.3d at 494.  The
Matula court also observed, "[n]or does the legislative history of § 1415(f) suggest a
congressional intent that damages be unavailable.  In fact, Congress expressly
contemplated that the courts would fashion remedies not specifically enumerated in IDEA."
Id. at 494-95 (citing House Report at 7 (excusing § 1415(f) exhaustion requirement where
"the hearing officer lacks the authority to grant the relief sought")).  These observations do
not mean, of course, that the Third Circuit would recognize a right to compensatory
damages, and such a prediction is made less likely given the contrary authority noted in the
text.

authority that compensatory damages are generally inconsistent with the purpose and statutory scheme of the IDEA, and until the Third Circuit holds otherwise, will not recognize damages as an available form of relief in IDEA actions.")  Finding this weight of authority to be compelling, this Court will likewise follow it and dismiss the claim for compensatory damages under the IDEA.[6]

The final issue pertaining to Count I is whether the IDEA and Section 504 are applicable to Defendant Lourdesmont.  Asserting that Adam was not a student, Lourdesmont argues that it was not responsible for his education.  Plaintiffs' Amended Complaint, however, alleges that, pursuant to an agreement between Lourdesmont, the School District, and/or NEIU, "Lourdesmont agreed to implement and provide special education services pursuant to Adam's IEP."  (Dkt. Entry 46, ¶ 12.)  The Court's task on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . ."  Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  Here, a reasonable reading of Plaintiffs' pleading would entitle Plaintiffs to relief under the Rehabilitation Act. Therefore, Defendant Lourdesmont's Motion to Dismiss Count I will be denied.

---

[6] Plaintiffs, however, may seek compensatory damages under their Section 504 claim.  See A.W. v. Jersey City Public Schs., 486 F.3d 791, 804 (3d Cir. 2007) ("The remedies for violation of Section 504 . . . include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract.").

C. Section 1983 Substantive Due Process and Equal Protection

Counts two through four of Plaintiffs' Amended Complaint assert violations of 42 U.S.C. § 1983.  (Dkt. Entry 46, ¶ 53 - ¶ 62.)  Section 1983 provides a civil remedy for acts made under color of law that deprives "any citizen of the United States or person within the jurisdiction thereof" of "rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

In a § 1983 case, the court must first determine whether the plaintiff has sufficiently alleged the deprivation of a right secured by the constitution.  D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1367 (3d Cir. 1992).  Count two of Plaintiffs' Amended Complaint alleges that Defendants had a constitutional duty to "provide safe, proper, nondiscriminatory and appropriate educational and special education services to Adam; the Defendants, while acting under color of state law, breached these duties, thus violating Plaintiffs' rights under the IDEA, Section 504 and the Fourteenth Amendment to the United States Constitution."  (Dkt. Entry 46,  ¶ 58.)  Plaintiffs' Amended Complaint also alleges that "Defendants, in placing and maintaining Adam in a dangerous environment, created the opportunity for the abuse to occur in violation of Adam's constitutional rights resulting in harm to him, which would not have existed absent the actions of the Defendant." (Id. at  ¶ 58.)  Count III of Plaintiffs' Amended Complaint asserts that "[t]he physical assault and abuse Adam suffered violated his constitutional right to bodily integrity and to be free

from assault under the Due Process Clause fo the Fourteenth Amendment." (Id. at ¶ 60.)

A violation of rights created by the IDEA is not actionable under § 1983. "A § 1983 action is not available to remedy violations of IDEA-created rights, absent some 'textual indication, express or implicit, that the [statutory] remedy is to complement, rather than supplant, § 1983.'" A.W. 486 F.3d 791, 802 (3d Cir. 2007) (quoting Rancho Palos Verdes v. Abrams, 544 U.S. 113, 122 (2005)). "[S]ection 1415(l) does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is statutory in nature." Id. at 798. The IDEA is "an example of a legislative enforcement scheme that precludes a § 1983 remedy." Id. "The IDEA includes a judicial remedy for violations of any right 'relating to the identification, evaluations, or educational placement of [a] child, or the provision of a free, appropriate public education to such child.' § 1415(b)(6). Given this comprehensive scheme, Congress did not intend § 1983 to be available to remedy violations of IDEA . . . ." Id. at 803.

Additionally, a violation of rights created by Section 504 is not actionable under Section 1983. "There is nothing in Section 504 that . . . causes us to conclude that Congress intended to allow § 1983 to be available to remedy Section 504 violations . . . ." Id. at 805.

Although Count II's title, "Claims Based Upon Section 1983 Based on State Created Danger and Special Relationship," does not indicate reliance on the IDEA or Section 504,

the language in the pleadings make numerous references to Adam's right to safe and

appropriate education.  Although Plaintiff is not using IDEA's "free appropriate public

education" terminology, the language is similar.  Additionally, paragraph 58 of the Amended

Complaint specifically asserts violation of Plaintiff's rights under the IDEA and Section 504.[7]

(Dkt. Entry 46, ¶ 58.)  Accordingly, Defendants' Motion to Dismiss Count II of Plaintiffs'

Amended Complaint, alleging violation of Plaintiffs' right to an appropriate and safe

educational placement, a right created by the IDEA and Section 504, must be granted.

Violation of rights created by the IDEA or Section 504 are not actionable under § 1983.

Count III of Plaintiffs' Amended Complaint asserts violation of Plaintiffs' Fourteenth

Amendment due process rights.  Plaintiffs assert that the "physical assault and abuse Adam

suffered violated his constitutional right to bodily integrity and to be free from assault." (Id. at

¶ 60.)  Plaintiffs base this violation on two separate theories of liability: the state created

danger theory and the special relationship theory.

The state does not have an affirmative duty under the due process clause to protect

its citizens.  D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364,1369 (3d Cir.

1992) (en banc).  "However, when the state enters into a special relationship with a

particular citizen, it may be held liable for failing to protect him or her from the private

---

[7]"[T]he Defendants, while acting under color of state law, breached these duties, thus
violating Plaintiffs' rights under the IDEA, Section 504 and the Fourteenth Amendment to
the United States Constitution." (Dkt. Entry 46, ¶ 58.)

actions of third parties." Id. at 1369.  When the state fails to protect the health and safety of the citizens to whom it owes an affirmative duty, special relationship liability attaches.  Id. This affirmative duty is "an exception to the general rule that the state has no affirmative duty to protect citizens from private harm." Susavage v. Bucks County Sch. Intermediate Unit No. 22, No. Civ. A. 00-6217, 2002 WL 109615, at *9 (E.D. Pa Jan. 22, 2002) (citing D.R., 972 F.2d at 1369).  "Under this doctrine, a state assumes such a duty when it takes physical custody of a person or otherwise prevents him from helping himself." Id. (citing D.R., 972 F.2d at 1370 (footnotes omitted)).

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

DeShaney, 489 U.S. 189, 200 (1989).

In D.R., the Third Circuit ruled that neither compulsory school attendance nor the existence of in loco parentis authority during the school day triggered an obligation on the part of a school district to protect students from private harm.  972 F.2d at 1372.  In short, "schools owe no duty under the Due Process clause to protect students from assaults by other students, even when they know or have reason to know of the danger." Lindsley v. Girard Sch. Dist., 213 F. Supp. 2d 523, 530 (W.D. Pa. 2002) (citing Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d 991, 994-95 (10th Cir. 1994)).

Plaintiffs would have this Court compare this situation to that in Nicini, which involved state placement of a child into state-regulated foster care.  Nicini v. Morra, 212 F.3d 798 (3d Cir. 2000).  In Nicini, the court analogized foster children to those who are involuntarily committed or institutionalized, and it determined that people who are placed in custodial environments are unable to seek alternative living arrangements and therefore fall into a special relationship with the state.  Id. at 808.  Unlike the plaintiff in Nicini, the Plaintiffs in this action remained Adam's primary caretakers, retained legal custody, approved Adam's education program, and retained the ability to withdraw Adam from Lourdesmont, should they have believed his health or safety was is danger.  See D.R. 972 F.2d at 1371-72.  Since no special relationship is present in this case, Defendants' Motion to Dismiss count three of Plaintiffs' Amended Complaint under the special relationship theory of liability will be granted.

Plaintiffs also assert an entitlement to relief under the state-created danger theory of liability.  As expressed in DeShaney, 489 U.S. at 195, the substantive aspect of the due process clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security."  Stated otherwise, the intent of the due process clause is "to protect the people from the State, not to ensure that the State protects them from each other."  Id. at 196.

As framed by our Court of Appeals, there are four elements to a state-created

danger claim: (1) the harm ultimately caused was foreseeable and fairly direct; (2) conduct by a state actor in willful disregard for the safety of the plaintiff; (3) some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 908 (3d Cir. 1997). In order to sustain a state-created danger analysis, the Plaintiff must plead that the state created the opportunity for the incident to occur. Id. The state actor must have "used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). "It is important to stress, for present purposes, that under the fourth element of a state created danger claim, 'liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" Id. at 282 (emphasis in original) (quoting D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992)). Our Court of Appeals has stressed the importance of affirmative conduct on the part of the state to present a viable state-created danger claim. Id.

Without determining the Amended Complaint's sufficiency in regards to the first three elements of a state-created danger theory, it is evident that the Amended Complaint does not allege facts from which it may be inferred that Defendants affirmatively created the

20

opportunity for the incident at Lourdesmont to occur.  Plaintiffs' Amended Complaint asserts

that Plaintiffs, Adam's parents, "located a placement for him [Adam] at Lourdesmont.  Still

having offered no placement for Adam of its own, the District supported this placement by

offering Adam an IEP and a Notice of Recommended Educational Placement to be

implemented at Lourdesmont in May, 2004."  (Dkt. Entry 46, ¶ 46.)  Thus, although the

Scranton School District supported the placement, Adam's parents located the placement.

The facts alleged in this case simply do not show that the Scranton School District took

affirmative acts that created the opportunity for the Lourdesmont incident to occur.  See

Bright, 443 F.3d at 281.

      Plaintiffs assert that the averment in paragraph 47 of the Amended Complaint that

"Defendants knew, or should have known" that the Lourdesmont placement was "an

incredibly dangerous one," suffices to sustain their state created danger theory, at least at

the pleadings state.  There is no allegation, however, that Adam was in any more danger

than any other Lourdesmont resident.  Furthermore, the fact that the incident in question

occurred nearly one year after Adam's placement undermines Plaintiffs' reliance upon the

state created danger theory.  Finally, Plaintiffs' averment that Defendants knew or should

have known of the dangerous environment at Lourdesmont is followed by the assertion that

Defendants "did not respond" to the environment, indicating that Plaintiffs claim rests on a

failure to warn or protect, and not on any affirmative act by Defendants.  As noted above, "it

is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282.  Plaintiffs' Amended Complaint provides no basis for a state created danger claim.

The Supreme Court has warned against expansion of liability under 42 U.S.C. § 1983 that "would trivialize the centuries-old principle of due process of law." Daniels v. Williams, 474 U.S. 327, 332 (1986).  Plaintiffs may pursue claims under state tort law, but any shortcomings in that law cannot be remedied by converting tortious conduct into the denial of due process.  Accordingly, Defendants' Motion to Dismiss Count III of Plaintiffs' Amended Complaint based on a state created danger theory of liability will be granted.[8]

Count IV of Plaintiffs' Amended Complaint alleges violation of Plaintiffs' Fourteenth Amendment equal protection rights.  Plaintiffs conclusorily assert that the "physical assault and abuse which Adam suffered was the result of purposeful discrimination against Adam by the Defendants, who treated Adam differently from other similarly situated regular education peers in violation of his equal protection rights under the Fourteenth Amendment of the United States Constitution." (Dkt. Entry 46, ¶ 62.)  Plaintiffs have not alleged a causal nexus between any discrimination and the third-party assault that occurred in this case. Moreover, the cases cited by Plaintiffs in support of this claim involved an assault by the

---

[8] If Plaintiffs have or discover facts that show affirmative conduct of a Defendant that created the opportunity for the assault to occur, other than concurrence in the placement of Adam at the facility, they may seek leave to amend the complaint.

teacher who is alleged to have treated the disabled students in a discriminatory manner.

See, e.g., Vicki M. v. Ne. Educ. Intermediate Unit, 486 F. Supp. 2d 437, 457 (M.D. Pa. 2007).  In such cases, the physical abuse was part of the discriminatory conduct undertaken by the defendant.  No such direct link is alleged here.  In any event, it is evident that the equal protection claim is based upon the alleged violations of the IDEA and Section 504 in that appropriate accommodations allegedly were not made for Adam's disability.  Under these circumstances, an equal protection claim fails because "if special accommodations for the disabled are to be required, they have to come from positive law and not through the equal protection clause."  Kevin M. v. Bristol Twp. Sch. Dist., No. 00-cv-6030, 2002 WL 73233, at *8 (E.D. Pa. Jan. 16, 2002).  Accordingly, Defendants' motions to dismiss Count IV will be granted.

D. Negligence

Count V of Plaintiffs' Amended Complaint alleges a cause of action in negligence against Lourdesmont.  (Dkt. Entry 46, ¶¶ 63 - 66.)  The necessary elements for an action in negligence are: (1) the existence of an obligation or duty recognized by law, which requires the actor to conform to a certain standard of conduct; (2) a breach or failure by defendant to conform to that duty; (3) a causal connection between the defendant's breach and resulting injury; and (4) actual damage or loss suffered by the Plaintiff.  Atcovitz v. Gulph Mills Tennis Club, Inc., 571 Pa. 580, 586 (2002) (citing Orner v. Mallick, 515 Pa. 132 (1987)).

Plaintiffs allege that Lourdesmont failed to "adequately supervise its staff, its program, Adam and other students/patients, and also failed to advise the Defendant District that Adam's IEP and program was inadequate to meet Adam's needs." (Dkt. Entry 46, ¶ 65 - ¶ 66.)  In paragraph sixty-six, Plaintiffs allege that Defendant Lourdesmont's breaches "were responsible for causing Adam's injuries." (Id. at ¶ 66.)  These averments are sufficient to sustain a negligence claim.  Accordingly, Lourdesmont's Motion to Dismiss Count V of Plaintiffs' Amended Complaint will be denied.

E. Breach of Contract

The Scranton School District and NEIU assert that Count VI of Plaintiffs' Amended Complaint should be dismissed based on a failure to plead that Adam was an intended third-party beneficiary of the alleged agreement between them for the provision of educational services.  (Dkt. Entry 48, at 18; Dkt Entry 54, at 17-18.)  Plaintiffs' Amended Complaint, however, specifically asserts that Adam was a third-party beneficiary to a contract between Defendants to "provide FAPE to Adam in a safe environment," and asserts breach of this contract due to failure to provide Adam with a FAPE in a safe environment.  (Dkt. Entry 46, ¶ 69 - ¶ 70.)  These averments are sufficient to support the breach of contract claim.  Accordingly, the  NEIU and Scranton School District's motion to dismiss Count VI will be denied.

Additionally, Defendant Lourdesmont claims that Plaintiffs' breach of contract claim

should fail since Lourdesmont was not responsible for Adam's education.  As discussed above, Plaintiffs' Amended Complaint asserts that pursuant to an agreement between Lourdesmont, the School District, and/or NEIU, "Lourdesmont agreed to implement and provide special education services pursuant to Adam's IEP." (Id. at ¶ 12.) This is a sufficient predicate for the contract claim, and Lourdesmont's Motion to Dismiss Count VI will also be denied.

F. Loss of Consortium

In Count VII, Plaintiffs Dennis C. and Maura C. assert a loss of consortium claim against all Defendants pursuant to the IDEA, Section 504, and Section 1983.  Defendants argue that loss of consortium damages are limited to spouses and have been denied in regards to children.

In Brandon, the Eastern District, although dismissing a compensatory damage claim under the IDEA, allowed the plaintiff mother to bring a loss of consortium claim for the "denial of her right to the 'comfort, companionship and society' of her son" in connection with a section 504 claim based upon "'Defendants' continual failures' to provide him with a free appropriate public education. . . ." Brandon, 2007 WL 2155722, at *7.  The court "found no authoritative precedent that would preclude such a claim," and, therefore, allowed the claim to proceed past the motion to dismiss stage. Id.  Similarly, no compelling precedent has been presented that precludes a parent's recovery of loss of consortium damages for

25

Section 504 violations.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for loss of consortium in regards to the Section 504 will be denied.

G. Accord and Satisfaction/ Release

The Scranton School District's final assertion is that the Settlement Agreement serves as an accord and satisfaction or release of Plaintiffs' claims for relief for the period from "1995 through April 10, 2005." (Dkt. Entry 54, at 19.)  The Settlement Agreement and Release repeatedly states that the settlement involves "any and all outstanding compensatory education claims of any kind, excluding compensatory damage claims." (Settlement Agreement and Release, Intro ¶ 2; emphasis added.)  Additionally, the attorney's fees paid in the Settlement Agreement were paid "for all attorney's fees and costs incurred in connection with all proceedings related to claims resolved by this agreement." (Id. at ¶ 7.)  It is therefore clear that the Settlement Agreement was not intended to discharge the Scranton School District's potential liability with respect to the injuries sustained by Adam as a result of the assault.  Accordingly, the Scranton School District's Motion to Dismiss based on accord and satisfaction/ release will be denied.

III.    CONCLUSION

For the reasons stated, Defendants' Motions to Dismiss will be granted in part and

denied in part.  An appropriate Order follows.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ADAM C., A Minor, By and Through His        :
Parents, Dennis C. And Maura C., of        :
Scranton, Pa., Dennis C. and Maura C.      :
Adults, Individually and on their Own      :
Behalf, of Scranton, Pa.                   :
                          Plaintiffs       :
                                           :
        v.                                 :        3:CV-07-0532
                                           :        (JUDGE VANASKIE)
SCRANTON SCHOOL DISTRICT,                   :
NORTHEASTERN EDUCATION                      :
INTERMEDIATE UNIT, LOURDESMONT              :
SCHOOL,                                     :
                          Defendants       :

ORDER

NOW, THIS 23rd DAY OF SEPTEMBER, 2008, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motions to Dismiss (Dkt. Entries 47, 49, and 53) are GRANTED with

respect to:

        a. the compensatory damages claim under the IDEA in Count I.

        b. the § 1983 claims in Counts II, III, and IV.

        c. the loss of consortium claim under the IDEA and § 1983 in Count VII.

2.  In all other respects, Defendants' Motions to Dismiss are DENIED.

3.  A telephonic scheduling conference shall be held on October 15, 2008, at 10:00

a.m.  Counsel for Plaintiffs is responsible for making the arrangements for the conference call.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge