**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ADAM C, et al.,

    Plaintiffs,

       v.

SCRANTON SCHOOL DISTRICT, et al.,

    Defendants.

CIVIL ACTION NO. 3:07-CV-532

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the report and recommendation of Magistrate William T. Prince. (Doc. 164.) The report recommends granting summary judgment in defendants' favor on all but one claim. For the reasons explained below, the report's recommendations will be adopted in part and rejected in part.

### I. Background[1]

During the time period relevant to this action, Adam C. was a minor student who resided in Scranton School District (SSD). Adam has an autism spectrum disorder and received special education services. Adam's difficulties led to his placement at Lourdesmont School, a private school with a partial-hospitalization program.[2]

The record reflects that fights were not at all uncommon at Lourdesmont. Deposition

---

[1] The facts are stated in the light most favorable to Adam, the nonmovant.

[2] Lourdesmont had an agreement with the Northeastern Educational Intermediate Unit (NEIU) to jointly provide services for children placed so that NEIU provided educational services while Lourdesmont provided mental-health services. The precise manner in which responsibility for educating Lourdesmont students was allocated between the SSD, the NEIU, and Lourdesmont itself is contested.

testimony from staff suggested that "kids were always getting hurt," (Doc. 144-8 at 10), and that "there were fights every day," (Doc. 144-3 at 22). The police were frequently called to Lourdesmont. (Gerrity Aff; Doc. 144-3 at 1, 2.) Despite the frequency of fights, many of the staff were not trained in behavior management techniques or how to intervene in disputes.

During his time at Lourdesmont, Adam was involved in approximately twenty fights with other children. On April 27, 2005, he became involved in a series of verbal exchanges with another student who had a history of behavior problems. The staff in the room could not redirect them, and the confrontation escalated to threats. Finally, the other child punched Adam, and both students exchanged blows.

Following the fight, Adam's mother was called to pick him up. She noticed that one side of his face was swollen, and she took him to the emergency room. Eventually, Adam suffered an aneurism which he claims arose from the incident. Other injuries included headaches, eye damage, and a decrease in cognitive functioning.

On March 30, 2007, Adam and his parents filed this action against Scranton School District, the Northeastern Educational Intermediate Unit (NEIU), and Lourdesmont. Adam brings statutory claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. He also brings common law claims of loss of consortium, breach of contract, and negligence. The three defendants each moved for summary judgment. These motions were referred to a magistrate judge for a report and recommendation. The magistrate judge recommends granting summary judgment in defendants' favor on all claims except the plaintiffs' negligence claim against Lourdesmont. The magistrate judge recommends permitting the negligence claim to go forward, but recommends granting Lourdesmont partial immunity so that liability must be predicated on gross negligence.

Adam and Lourdesmont timely filed their objections to the magistrate judge's report. The parties have responded to the objections, and they are ripe for review.

## II. Discussion

### A. Legal Standard for Reviewing a Report and Recommendation

Where objections to the magistrate judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). In making its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

Here, the court reviews the portions of the report and recommendation which Banks objects to de novo. The remainder of the report and recommendation is reviewed for clear error.

3

**B. Legal Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

4

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## C. The Rehabilitation Act and ADA Claims Survive Summary Judgment

The report describes the evidence regarding Adam's educational environment at length. Below is an excerpt from the report's discussion:

> [T]he environment at Lourdesmont was, in many senses, awful. Fights occurred daily; students perpetrated violence against each other and against teachers, walked out of classes, and damaged school property. With a maximum of three staff members available to respond to fights, and only one being on duty at times, Lourdesmont had a demonstrated, perpetually inadequate system for crisis management. Other shortcomings at Lourdesmont only compounded these problems: NEIU teachers were forbidden from intervening in fights; teachers and therapists alike had little to no training in defusing students' aggression; and numerous Lourdesmont personnel, including the principal and Adam's primary therapist, were manifestly unqualified for their positions . . . . All students at Lourdesmont were subject to the same woeful educational environment . . . .

(R & R; Doc. 164 at 30–32).

The report notes that the evidence permits the inference that "the extent of instructional and managerial dysfunction at Lourdesmont was such that Adam was denied [a free appropriate public education] while he attended there." (Doc. 164 at 31). Because no objections are raised to this legal conclusion, and it is not clearly erroneous, the Court presumes that the

5

evidence permits an inference that Adam was denied an appropriate education.

Despite this conclusion, the magistrate judge recommends dismissing the plaintiffs' claims under the Rehabilitation Act (RA) and the Americans with Disabilities Act (ADA).  In part, this recommendation is based on the fact that "the record does permit contrary inferences [about Adam receiving an appropriate education]—based on evidence like Adam's report that he enjoyed Lourdesmont and Ms. Krieg-Grace's recollection that Adam was doing well, as well as the lack of positive evidence that Adam derived no academic benefit from being at Lourdesmont—but as in *Mendowitz*, these contrary inferences are not strong enough to dictate the proper conclusion."  (R & R; Doc. 164 at 31).

This conclusion misapplies the standard for summary judgment: disputed issues of fact are to be viewed in favor of the non-moving party.  Thus, for summary judgment purposes, the court assumes that Adam was denied an appropriate education, and then determines whether this denial might amount to a violation of the RA or ADA. Where resolutions of disputed facts could permit reasonable jurors to arrive at differing conclusions on liability, judgment as a matter of law is inappropriate.

The same standards[3] govern liability under the RA[4] and the ADA.[5]  *Chambers* ex rel. *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing

---

[3] The RA additionally requires that the program receive federal financial assistance. However, it is undisputed that defendants receive such assistance.

[4] Under Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)), "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

[5] The ADA provides in pertinent part: "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

*McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")). To survive summary judgment under either of these statutes, the plaintiffs carry the burden of introducing sufficient evidence from which a reasonable juror could find that Adam "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers*, 587 F.3d at 189 (citing *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)). Under the RA, public schools[6] have an obligation to provide a free appropriate public education to disabled students. 34 C.F.R. § 104.33(a) (defining "appropriate education" in part as an education "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met"). Thus, schools violate the RA or ADA when they fail to

---

[6] Lourdesmont did not object to the portion of the magistrate judge's report finding that it receives federal financial assistance and is subject to the RA. Private schools have no obligation to provide an appropriate education to disabled children, *see* 34 C.F.R. § 104.33 (providing FAPE only required for a "recipient that operates a *public* elementary or secondary education program"). The implementing regulations to the RA are clear that private organizations providing education or health care (thus providing "programs"or "activities" within the meaning of the RA, *see* 34 C.F.R. § 104.3(k)(3)(i)), which indirectly receive funds through the IDEA (thus making them "recipients" within the meaning of the RA, *see* 34 C.F.R. § 104.3(f)), are subject to the obligations not to discriminate, 34 C.F.R. § 104.4. Thus, while failure to provide a FAPE will not *itself* subject Lourdesmont to liability, "discrimination" includes "aid[ing] or perpetuat[ing] discrimination . . . by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipient[']s program or activity." 34 C.F.R. § 104.4(b)(v). A rational juror could find that Lourdesmont provided significant assistance to public educational agencies who discriminated on the basis of disability in providing educations that were manifestly not equal to, and less effective than, those provided to others. *See* 34 C.F.R. § 104.4(b)(ii)-(iii). The standards applying to Lourdesmont under the ADA are somewhat different. Although not addressed by the parties or the magistrate judge, it is important to note that the ADA is divided into three titles. Title I deals with employment; Title II with state and local governments, and Title III with places of public accommodation. *See* 42 U.S.C. § 12101 *et seq.* Lourdesmont argued in its briefing that the ADA did not apply to it. It was correct that it is not a "public entity" within the meaning of Title II. *See* 42 U.S.C. § 12131(1). However, as a private school, Lourdesmont is a place of public accommodation subject to Title III of the ADA. *See* 42 U.S.C. § 12181(7)(F)-(J) (defining an elementary private school or hospital, *inter alia*, as a place of public accommodation). There has been no showing that Lourdesmont, as a place of public accommodation, has discriminated against Adam on the basis of disability, and thus Lourdesmont cannot be held liable under the ADA.

meet the needs of a disabled student "as adequately" as those of nondisabled students.

Here, the first two elements—that Adam was disabled and otherwise qualified to attend school— are uncontested. The sticking point is the third element, which requires that Adam "was denied the benefits of the [school] program." The evidence, viewed in the light most favorable to Adam, suggests an educational environment so woefully inadequate as to constitute a denial of an appropriate education. The magistrate judge, however, reasoned that the defendants' failure to provide an appropriate education could not amount to discrimination, because the inadequate educational environment was not created "solely" because of Adam's disability.

In reaching this conclusion, the report notes that "Adam was not *singled out* for poor instruction," and that indeed "*all students* at Lourdesmont were subject to the same woeful educational environment." (R & R; Doc. 164 at 32) (emphasis added). The report dismisses the possibility that Adam was discriminated against on the basis of his disability because *all* students at Lourdesmont suffered the same educational shortfalls. Because their poor environment was shared in common, the reasoning goes, Adam was not uniquely discriminated against.

This assessment, however, ignores the other commonality the students at Lourdesmont shared: they were *all* impaired. Lourdesmont is a special school. *All* of the students in Adam's class were emotionally disturbed. (Grace dep. at 31; Doc. 143 Ex. A). No nondisabled student was placed at Lourdesmont, and no evidence suggests that the regular schools in the area were as pervasively dangerous or understaffed as Lourdesmont. Under the magistrate judge's reasoning, a school district could escape liability for

8

discrimination by shipping its disabled students—and *only* its disabled students—to (say) Riker's Island, so long as the *entire group* is denied appropriate educations.

This cannot be. The RA and ADA do not require that only the plaintiff be discriminated against; it is sufficient that the plaintiff is part *of a class* that is discriminated against because of disability. This is precisely Adam's theory of the case: public schools abdicated their responsibilities to provide appropriate educations to disabled students by warehousing some in an environment utterly unequipped to meet their needs. Viewed in his favor, Adam's proffered evidence suggests a grossly inappropriate educational environment. Viewed in the light most favorable to Adam, this evidence suggests that Adam, like the other students at Lourdesmont, was intentionally[7] denied the educational benefits nondisabled children received; and that Adam, again like all the other students at Lourdesmont, was placed there solely because of his disability. This evidence is sufficient to withstand summary judgment on the RA and ADA claims with respect to Scranton School District and

---

[7] The magistrate judge noted that intentional discrimination was not an element of a claim under the ADA or RA. Regardless, compensatory damages are only available if the plaintiffs are able to prove intentional discrimination, which requires that an "official who has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has actual knowledge of discrimination . . . and fails adequately to respond." *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The officials' response must amount to deliberate indifference to discrimination. *Id.* While *Gebser* was a Title IX case, Title IX was modeled after Title VI, and the remedies available under the ADA and RA are those available under Title VI. *See* discussion of consortium claim, *infra. See also Gebser*, 524 U.S. at 286 (noting that Congress modeled Title IX after Title VI); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) ("[T]he Court has interpreted Title IX consistently with Title VI."). Both Title II of the ADA and Section 504 only provide for damages where there is *intentional* discrimination because of disability. *See Barber* ex rel. *Barber v. Co. Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) ("[t]o recover compensatory damages under § 504, a plaintiff must establish that the agency's discrimination was intentional."); *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007); *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002); *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) ("The law is well settled that intentional violations of Title VI, and thus the ADA and the Rehabilitation Act, can call for an award of money damages.").

the NEIU.[8] With respect to Lourdesmont, it should be noted that while a private school has no obligation to provide appropriate educations under the RA or ADA, a private school can discriminate under the RA by intentionally giving assistance to public agencies that discriminate. See 34 C.F.R. § 104.4(b)(v); discussion *supra* note 6. Thus, Lourdesmont may be liable under the RA. There has been no other showing that Lourdesmont discriminated on the basis of disability,[9] and therefore summary judgment in Lourdesmont's favor on the ADA claim will be granted.

Thus, the recommendation that summary judgment be granted on the RA and ADA claims will be rejected, and the SSD and NEIU's motions for summary judgment will be denied. Lourdesmont's motion for summary judgment will be granted on the ADA claim and denied on the RA claim.

## D. Breach of Contract Claim

The report recommends granting summary judgment in favor of defendants on the breach of contract claim. The plaintiffs do not object to his portion of the report. This

---

[8] The NEIU asserts that the responsibility for providing Adam with an appropriate education rested with Scranton School District. (See Statement of Facts; Doc. 126-5 at para 2). However, the plaintiffs assert that NEIU is co-responsible for the provision of an appropriate education and provides evidence that NEIU was responsible for writing and implementing Adam's individualized education program. (*See* Contract at 6; Doc. 144-27, Ex. X.) Whether discrimination existed, and which (if any) defendant was responsible, are questions for the trier of fact and cannot be resolved on summary judgment.

[9] Indeed, the plaintiffs in their briefing only argue that Lourdesmont is a "public entity" within the meaning of Title II of the ADA and appear to argue Lourdesmont's alleged failure to provide an appropriate public education to Adam subjects it to liability under the ADA. (*See* Pltf. Br. in Opp. at 40; Doc. No. 159 at 43.) The plaintiffs argue that because Lourdesmont is an "instrumentality" of the public schools, it is therefore a "public entity." *See* 42 U.S.C. § 12131(1) (noting that "public entity"includes any state or local government as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government.") The plaintiffs' interpretation of the word "instrumentality" is far-fetched. As used in the statute, the word "instrumentality" means "a subsidiary branch especially of a governing body." Webster's Third New International Dictionary, www.mwu.eb.com/mwu. An "instrumentality" means a direct intermediary of the government; not a private entity contracting with the government. Lourdesmont is not an instrumentality of the public entities involved here.

recommendation is not clearly erroneous and will be adopted.

**E. Negligence**

The magistrate judge recommends denying Lourdesmont's motion for summary judgment, but would hold Lourdesmont to a higher standard of care than ordinary negligence. Both Lourdesmont and the plaintiffs object to this recommendation.

Lourdesmont objects to the portion of the report recommending that Lourdesmont's motion for summary judgment on the negligence claim be denied. Specifically, Lourdesmont objects the portion of the report recommending that plaintiffs "may proceed on this issue only on the question of whether Lourdesmont was grossly negligent *in providing* [a free appropriate public education] . . . or in supervising its staff, program, and students." (R & R; Doc. 164 at 38).

A negligence claim has four familiar elements that the plaintiff must demonstrate: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damages resulting to the plaintiff." *Farbaugh v. Pa. Turnpike Comm'n*, 590 Pa. 46, 911 A.2d 1264, 1272–73 (2006) (citing *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005)).

Lourdesmont is correct that it cannot be held liable in tort for failing to provide an appropriate education. The plaintiffs have brought a breach of contract claim against Lourdesmont for failing to provide an appropriate education to Adam, and thus any negligence claim brought under the same theory fails under the "gist of the action" doctrine.

> The "gist of the action doctrine" operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims . . . . Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus

> agreements between particular individuals . . . . In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts . . . [T]he doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Hart v. Arnold*, 884 A.2d 316, 339–40 (Pa. Super. 2005). Thus, to the extent that the negligence claim seeks to impose a duty on Lourdesmont to provide a free appropriate public education, it fails because such a duty could arise solely by contract.[10]

The plaintiffs object to the portion of the report determining that the negligence claim against Lourdesmont must be supported by proof of gross negligence. The report recommends that, absent gross negligence, Lourdesmont be given immunity under the Pennsylvania Mental Health Procedures Act (MHPA).

The MHPA provides broad immunity "to physicians and others who participate in the involuntary commitment process." *Benn v. Universal Healthy Sys., Inc.*, 371 F.3d 165, 176 (3d Cir. 2004). The MHPA provides, in pertinent part, that:

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, . . . shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). Under this provision, the standard of care for mental health providers is gross negligence. *See Cohen v. Kids Peace Nat. Centers, Inc.*, 256 F. App'x 490, 492 (3d Cir. 2007). As defined by the Supreme Court of Pennsylvania, gross negligence is "a form

---

[10] Here, because summary judgment has been granted on the contract claim, there is no showing even of a contractual duty owed by Lourdesmont.

12

of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Id.* (quoting *Albright v. Abington Mem'l Hosp.*, 548 Pa. 268 (1997)).

The plaintiffs argue that this heightened standard does not apply here, because by its terms, the MHPA only applies to "all involuntary treatment of mentally ill persons" and "all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. "Inpatient treatment" includes all treatment requiring full or part-time residence in a facility. The plaintiffs argue that because Adam's treatment at Lourdesmont was neither involuntary nor inpatient, the MHPA is inapplicable.

This argument was raised before the magistrate judge, who rejects it on the ground that Adam's treatment was "involuntary" because he was a minor at the time of his placement and was in the legal custody of his parents. (R&R; Doc. 164 at 35).

This conclusion is in error. "Involuntary" treatment does not refer a child's unwilling acquiescence to a parent's demand; it refers to treatment undergone against one's will under the coercive power of the state, pursuant to involuntary commitment proceedings. The "involuntariness" is vis-a-vis the *government*, not one's *parents*. This is reflected by the thrust of the MHPA, which provides procedural protections for those undergoing commitment proceedings. For example, Article III of the MHPA, titled "Involuntary Examination and Treatment," provides that involuntary treatment extending beyond five days requires the certification of a judge or mental health review officer. *See* 50 P.S. §§ 7302(d), 7303. No evidence suggests that Adam's treatment was pursuant to the involuntary commitment procedures the MHPA provides for.

13

Thus, the MHPA does not apply, and Lourdesmont will be held to the standard of ordinary negligence. A negligence action requires that the plaintiffs prove: "a legally recognized duty or obligation owed them by [Lourdesmont]; a breach of that duty; a causal connection between the breach of duty and the resulting injury; and actual loss or damage suffered by plaintiffs." *Eckroth v. Pennsylvania Elec., Inc.*, ___ A.3d ___, 2010 WL 5132855 (Pa. Super. Dec. 17, 2010) (citing *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 209–10 (Pa. Super. 1993)). Schools have a duty of reasonable care under the circumstances:

> What constitutes proper supervision depends largely upon the circumstances attending the event. Thus, the fact that supervisory personnel present when an accident occurs could conceivably have prevented its occurrence does not necessarily render the school agency liable if the supervisory personnel was competent and acted reasonably under all the circumstances. . . [t]here is no liability predicated on lack or insufficiency of supervision where the event in connection with which the injury occurred was not reasonably foreseeable.

*Simonetti v. Sch. Dist. of Phila.*, 454 A.2d 1038, 1039 (Pa. Super. 1982) (quoting *Bottorf v. Waltz*, 369 A.2d 332, 334 (Pa. Super. 1976)).

The plaintiffs have submitted evidence showing that the child who struck Adam was known by Lourdesmont employees to have "behavior issues" and suffer from an emotional disturbance. Additionally, in the one month the child had attended Lourdesmont before the altercation with Adam occurred, he had been involved in at least one physical confrontation with another student. When viewed in the light most favorable to the plaintiffs, the evidence suggests that the staff were inadequately trained and equipped to handle the many physical altercations occurring at the school. Based on the evidence submitted, a reasonable juror could find that Lourdesmont's failure to exercise reasonable care under all the circumstances was the proximate and actual cause of Adam's injuries. Thus, the plaintiffs' negligence claim survives summary judgment.

**F. Loss of Consortium Claim**

The plaintiffs object to the magistrate judge's recommendation that the defendants' motions for summary judgment be granted on the loss of consortium claim. The defendants assert that parents may not bring a loss of consortium claim due to the loss of their child's companionship and society under Pennsylvania law.

Under Pennsylvania's common law, a loss of consortium claim is intended to compensate one for the "loss of the services, society, and conjugal affection of one's spouse." *Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410, 417 (Pa. Super. 2004) (quoting *Anchorstar v. Mack Trucks, Inc.*, 533 Pa. 177, 180 (1993)). In Pennsylvania, "[d]amages for loss of consortium are available only to spouses, and do not include a parent's loss of society and companionship of her child." *Dept. of Public Welfare v. Schultz*, 855 A.2d 753, 755 (Pa. 2004) (citing *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1149 (Pa. 1997)). Thus, to the extent that any loss of consortium claim is predicated on the state law negligence action, it cannot go forward.

The plaintiffs further argue that "because plaintiffs' claims under both Section 504 and the ADA should survive summary judgment, the consortium claim should similarly survive." (Pltfs' Br. in Supp. at 14; Doc. 165 at 19.) It is true that the magistrate judge notes that "[b]ased on the Court's prior [opinion], plaintiffs' loss-of-consortium claim could only be predicated upon survival of their [discrimination] claim[s]." This prior order of September 23, 2008, was an order disposing of a motion to dismiss. On the loss of consortium claim, the Court noted that a district court in the Eastern District of Pennsylvania permitted a parent's loss of consortium claim to proceed under Section 504. (Sept. 23, 2008 Order; Doc. 59 at 25.)

15

The Court concluded that because "no compelling precedent has been presented that precludes a parent's recovery of loss of consortium damages for Section 504 violations," the claim should be allowed to proceed.

As an initial matter, it is the duty of the federal courts to correctly apply the law at all times. None of the parties have presented the Court with relevant case law, aside from a few district court cases which are not authoritative. Having researched the law itself, the Court is convinced that permitting the loss of consortium claim to proceed was in error. Therefore, granting summary judgment in favor of the defendants on this claim is appropriate.

The remedies available under the ADA are coextensive with those available under the Rehabilitation Act.[11] The remedies available under the RA, in turn, are by statute hinged to the remedies available under Title VI of the Civil Rights Act of 1964.[12] Therefore, only if a loss of consortium claim may be brought under Title VI, may it be brought under the ADA or RA. *See A.W. v. Jersey City Public Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (noting that the remedies under the RA "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964") (quoting *Barnes v. Gorman*, 536 U.S. 181, 185 (2002)).

Title VI broadly prohibits discrimination on the ground of race, color, or national origin

---

[11] The ADA provides in pertinent part that "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 [i.e., Section 505 of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133.

[12] Under 29 U.S.C. § 794a(2), "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . under [Section 504 of the Rehabilitation Act]." Thus, only those remedies available under Title VI are available to redress violations of Section 504 of the Rehabilitation Act.

16

in programs or activities receiving federal monies.[13]  The Supreme Court has established that individuals have an implied private right of action under Title VI. *Gorman*, 536 U.S. at 185 (noting that "our prior decisions have found an *implied* right of action") (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 (1979)). The Supreme Court has recognized the "general rule" that "absent clear direction to the contrary by Congress, the federal courts have the power to award *any appropriate relief* in a cognizable cause of action brought pursuant to a federal statute." *Barnes v. Gorman*, 536 U.S. 181, 184 (2002) (quoting *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) (emphasis added)).

The Supreme Court has discussed the scope of "appropriate relief" under Title VI in *Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002).  The Court noted that Title VI invokes Congress's Spending Clause power and that it has "repeatedly characterized this statute and other Spending Clause legislation as 'much in the nature of a *contract:* in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" *Id.* at 186 (quoting *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). The Court has "applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages. Thus, a recipient may be held liable to third-party beneficiaries for intentional conduct that violates the clear terms of the relevant statute . . . ." *Id.* at 186–87 (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)).  Additionally, the Court has applied the contract-law analogy "in finding a damages remedy available in private suits under Spending Clause legislation." *Id.*

---

[13] "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

17

at 187 (citing *Franklin*, 503 U.S. at 74–75).

The same analogy applies to determining the *scope* of damages remedies. *Id.* The contractual nature of Spending Clause legislation implies that a remedy is "appropriate relief" only if the recipient of federal funding is on notice that "by accepting federal funding, it exposes itself to liability of that nature." *Id.* The Supreme Court has noted that a recipient of federal funding is "on notice" that it is subject to any remedies specifically provided for by statute as well as "those remedies traditionally available in suits for breach of contract." *Id.* Applying this contract analogy, the Court has held that while compensatory damages are available under Title VI for intentional discrimination, punitive damages are not. *Id.* at 189.

Courts considering a type of remedy under Spending Clause legislation should consider two questions: (1) does the complained-of conduct fall within the scope of conduct for which funding recipients may be liable?; (2) is the damages remedy, and its scope, available at contract? Only if both questions can be answered in the affirmative should the court allow the claim to proceed.

Because here, the answer to both these questions is "no," the plaintiffs' loss of consortium claim cannot stand.

First, the complained-of conduct does not fall within the scope of conduct recognized in a breach of contract action. As the Court noted, federal funding recipients may be liable to "third-party beneficiaries" of the relevant statute. *Id.* at 186–87. Conduct affecting other parties—who are not contemplated beneficiaries of the legislation—does not foreseeably subject the recipient to liability. Therefore Adam, as a third-party beneficiary of Section 504 and the ADA, may pursue compensatory damages for *his* foreseeable injuries flowing from

18

the defendants' alleged federal statutory violations. His *mother*, however, is not a contemplated beneficiary of these statutes. Therefore, the defendants are not liable to her for her injuries resulting from the loss of her son's services and society.

Second, the court considers whether the damages sought would be available in a contract claim. A fundamental principle of contract law is that "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." Restatement (Second) of Contracts § 351 (1981); *see also Hadley v. Baxendale*, 156 Eng. Rep. 145 (Ex. 1854) (explaining that recoverable damages are those naturally resulting from breach, or are the consequences of special or unusual circumstances which are in reasonable contemplation of3 the parties to the contract). Loss of consortium claims are not available at contract and are thus unavailable under the ADA and RA. *Accord Vargus v. Matthew Donut, Inc.*, 1994 WL 259802 (D.N.H. 1994) (quoting *Tauriac v. Polaroid Corp.*, 716 F. Supp. 672, 673 (D. Mass. 1989) ("The spouse of an alleged federal civil rights victim is not permitted an ancillary cause of action for loss of consortium.").

For these reasons, summary judgment will be granted in defendants' favor on the loss of consortium claim.

### III. Conclusion

For the reasons explained above, the magistrate judge's report will be adopted in part and rejected in part. Scranton School District's and the NEIU's motions for summary judgment will be granted on the loss of consortium claim and the breach of contract claim, but denied on the RA and ADA claims. Lourdesmont's motion for summary judgment will be granted on

19

the ADA claim, the loss of consortium claim, and the breach of contract claim, but denied on

the RA and negligence claim.  An appropriate order follows.

March 17, 2011                          /s/ A. Richard Caputo
Date                                    A. Richard Caputo
                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ADAM C., et al.,

    Plaintiffs,

        v.

SCRANTON SCHOOL DISTRICT, et al.,

    Defendants.

NO. 3:07-CV-532

(JUDGE CAPUTO)

## ORDER

**NOW**, this 17th day of March, 2011, **IT IS HEREBY ORDERED** that the report and recommendation (Doc. 164) disposing of the defendants' motions for summary judgment (Docs. 126, 129, 154) is **ADOPTED IN PART** and **REJECTED IN PART** as follows:

(1) The recommendation that the defendants' motions for summary judgment on the loss of consortium claim be granted is **ADOPTED**.

(2) The recommendation that the defendants' motions for summary judgment on the breach of contract claim be granted is **ADOPTED**.

(3) The recommendation that Lourdesmont's motion for summary judgment on the negligence claim be denied is **ADOPTED**, with the caveat that the magistrate judge's recommendation that Lourdesmont be granted partial immunity is **REJECTED**.

(4) The recommendation that Lourdesmont's motion for summary judgment on

the ADA claim be granted is **ADOPTED**.

(5) The recommendation that Scranton School District's, NEIU's, and Lourdesmont's motions for summary judgment on the Section 504 of the Rehabilitation Act claim be granted is **REJECTED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge