## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAM C, et al.,

Plaintiffs,

v.

SCRANTON SCHOOL DISTRICT, et al.,

Defendants.

CIVIL ACTION NO. 3:07-CV-532

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are four consolidated motions for reconsideration, (Docs. 176, 178, 180, 181), arguing reconsideration of the Court's Opinion and Order adopting in part and rejecting in part the Magistrate Judge's Report and Recommendation. (Doc. 174). For the reasons explained below, all four motions for consideration will be denied.

### I. Background

During the time period relevant to this action, Adam C. was a minor student who resided at home within the Scranton School District (SSD). Adam has an autism spectrum disorder and received special education services. Adam's difficulties led to his placement at Lourdesmont School, a private school with a partial-hospitalization program.[1]

The record reflects that fights were not at all uncommon at Lourdesmont. Deposition testimony from staff suggested that "kids were always getting hurt," (Doc. 144-8 at 10), and

_____

[1] Lourdesmont had an agreement with the Northeastern Educational Intermediate Unit (NEIU) to jointly provide services for children placed so that NEIU provided educational services while Lourdesmont provided mental-health services. The precise manner in which responsibility for educating Lourdesmont students was allocated between the SSD, the NEIU, and Lourdesmont itself is contested.

that "there were fights every day," (Doc. 144-3 at 22). The police were frequently called to Lourdesmont. (Gerrity Aff; Doc. 144-3 at 1, 2).  Despite the frequency of fights, many of the staff were not trained in behavior management techniques or how to intervene in disputes.

During his time at Lourdesmont, Adam was involved in approximately twenty fights with other children.  On April 27, 2005, he became involved in a series of verbal exchanges with another student who had a history of behavior problems.  The staff in the room could not redirect them, and the confrontation escalated to threats.  Finally, the other child punched Adam, and both students exchanged blows.

Following the fight, Adam's mother was called to pick him up.  She noticed that one side of his face was swollen, and she took him to the emergency room.  Eventually, Adam suffered an aneurism, which he claims arose from the incident. Other injuries included headaches, eye damage, and a decrease in cognitive functioning.

On March 30, 2007, Adam and his parents filed this action against Scranton School District (SSD), the Northeastern Educational Intermediate Unit (NEIU), and Lourdesmont. Adam brought statutory claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.  He also brought common law claims of loss of consortium, breach of contract, and negligence.  The three defendants each moved for summary judgment. These motions were referred to Magistrate Judge Prince for a report and recommendation.  On December 16, 2010, the Magistrate Judge recommended granting summary judgment in Defendants' favor on all claims except the Plaintiffs' negligence claim against Lourdesmont.  The Magistrate Judge also recommended permitting the negligence

2

claim to go forward, but recommended granting Lourdesmont partial immunity so that liability must be predicated on gross negligence.

On March 17, 2011 the Court adopted in part and rejected in part the Magistrate Judge's Report and Recommendation.

In my Opinion and Order, I adopted: (1) the recommendation that Defendants' motions for summary judgment on the loss of consortium claim be granted; (2) the recommendation that defendants' motions for summary judgment on the breach of contract claim be granted; (3) the recommendation that Lourdesmont's Motion for Summary Judgment on the negligence claim be denied; and (4) the recommendation that Lourdesmont's Motion for Summary Judgment on the American's with Disabilities Act (ADA) claim be granted.

I rejected the: (1) recommendation that Lourdesmont be granted partial immunity; (2) the recommendation that all Defendants' motions for summary judgment on Section 504 of the Rehabilitation Act claim be granted; and (3) the recommendation that SSD and NEIU's claims for summary judgment on the ADA claim be granted.

On the basis of the Court's Opinion and Order all parties have filed motions for reconsideration.  For the reasons below all four motions to reconsider will be denied.

## II. Discussion

### A. Legal Standard for a Motion for Reconsideration

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight days of entry.  FED. R. CIV. P. 59(e).  "The purpose of a motion for reconsideration is to

correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citation omitted).  A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa.2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.,* Civ. A. No. 05-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006).  Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F.Supp.2d 502, 504 (M.D. Pa.1999).

**B. Intentional Discrimination**

Plaintiff's Motion for Reconsideration argues that intentional discrimination is not required to obtain damages under Section 504 of the Rehabilitation Act[2] or the ADA.[3]  (Doc.

---

[2] Under Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a)), "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

176).  In support of this assertion, Plaintiff cites *Ridgewood Board of Education v. N.E.*, 172 F3d 238, 253 (3d Cir. 1999), which states that "a plaintiff need not prove that defendants' discrimination was intentional."

Plaintiff's Motion for Reconsideration fails because it does not meet the legal standard required for it to be granted.  As stated above, to succeed on a motion for reconsideration, the moving party must show: (1) a change in the law; (2) a change in the facts (new evidence); or (3) clear error on the part of the Court.  There has been no change in the law or fact, and the Court's determination that intentional discrimination is necessary for compensatory damages was not in clear error.  (Doc. 174 at 9 n.7).  *Kaitlin C. v. Cheltenham Township School District*, No. 07-2930, 2010 WL 786530, offers strong support for my determination.  In a comprehensive analysis of the above quote from *Ridgewood*, the *Kaitlin C.* court determined that "[t]here is no indication that the court's statement in *Ridgewood* was intended to apply to § 504 claims seeking compensatory damages.  The Rehabilitation Act's remedies provision and Supreme Court precedent support this reading of *Ridgewood*."  *Id.* at *4.  The Court agrees and finds no clear error in holding that intentional discrimination is required to obtain damages under Section 504 or the ADA.

C. Section 504 of the Rehabilitation Act

All Defendants contest the reversal of the Magistrate Judge's determination that they

---

[3] The ADA provides in pertinent part: "[s]ubject  to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

were entitled to summary judgment on § 504 of the Rehabilitation Act.

### 1. Finding of Denial of Free Appropriate Education (FAPE)

Defendants Lourdesmont and SSD argue that the Court applied the incorrect standard of review in adopting the Magistrate Judge's finding that Adam was Denied FAPE while attending Lourdesmont. On this point, Defendants' motions for reconsideration fail because they do not meet the legal standard required for it to be granted.

The Court reviewed the Report and Recommendation to which Defendants objected to *de novo*, and the remainder for clear error. (Opinion and Order at 3). As such, the Court found that:

> The report notes that the evidence permits the inference that "the extent of instructional and managerial dysfunction at Lourdesmont was such that Adam was denied [a free appropriate public education] while he attended there." (Doc. 164 at 31). Because no objections are raised to this legal conclusion, and it is not clearly erroneous, the Court presumes that the evidence permits an inference that Adam was denied an appropriate education.

(Opinion and Order at 5-6).

This level of review was appropriate and the finding will not be disturbed. The law "requires district courts to review such objections de novo unless the objection is 'not timely or not specific.'" *Brown v. Astrue*, No. 10-3435, 2011 U.S. App. LEXIS 13661 at *4 (3d Cir. July 6, 2011) (citing *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984)). At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998). Since this finding was not objected to, and the record supports the Magistrate Judge's finding, the Court's review under the clear

error standard was not itself clear error.

### 2. Intentionality Under Section 504 and the ADA[4]

In their motions for reconsideration, all Defendants allege that the Court has misconstrued the nature of Section 504 of the Rehabilitation Act in finding that the Plaintiff was intentionally denied the educational benefits nondisabled children received solely because of his disability. (Opinion and Order at 9). The Court disagrees, as the evidence in the record is sufficient to withstand summary judgment on the RA and ADA claims.

To survive summary judgment under the Rehabilitation Act, the Defendants carry the burden of introducing sufficient evidence from which a reasonable juror could find that Adam "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)). While the first two elements are not at issue, Defendants contest the Court's analysis as to the third:

> "The RA and ADA do not require that only the plaintiff be discriminated against; it is sufficient that the plaintiff is part of a class that is discriminated against because of disability. This is precisely Adam's theory of the case: public schools abdicated their responsibilities to provide appropriate educations to disabled students by warehousing some in an environment utterly unequipped to meet their needs. Viewed in his favor, Adam's proffered evidence suggests a grossly inappropriate educational environment. Viewed in the light most

---

[4]For Defendants NEIU and SSD, this analysis applies both to the Section 504 and ADA claims as the same standards govern liability under the RA and ADA. *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995)). Summary judgment was granted in favor of Lourdesmont on the ADA claim. (Opinion and Order at 19-20).

favorable to Adam, this evidence suggests that Adam, like the other students at Lourdesmont, was intentionally denied the educational benefits nondisabled children received; and that Adam, again like all the other students at Lourdesmont, was placed there solely because of his disability. This evidence is sufficient to withstand summary judgment on the RA and ADA claims . . . ."

(Opinion and Order at 9).

Defendant SSD argues that "Third Circuit law requires that the claim for violation of Section 504 of the Rehabilitation Act against SSD must be supported by facts establishing that the disability of the Plaintiff was the sole cause of any alleged discrimination or denial of benefits." (Doc. 180 at ¶ 3). Specifically, SSD alleges that "[t]here was no evidence that the conduct of SSD was directed specifically against the Plaintiff on the basis of his disability, or, in other words, there was no evidence that the SSD failed to provide FAPE or any educational service for the sole reason that Adam was disabled." (Doc. 182 at 6). Lourdesmont similarly claims there is "no causal connection" and that this finding is "without foundation in the evidence." (Doc. 183 at 5-6). Additionally, NEIU argues "this Court need not now address the issue of what conduct is sufficient to satisfy the intent requirement because the record evidence is completely devoid of any evidence regarding intent of any sort." (Doc. 179 at 9-10).

As stated above, the court presumed in its analysis that the evidence permitted an inference that Adam was denied an appropriate education. Therefore, the question is whether, for the purposes of summary judgment, the inadequate conditions alone constituted discrimination for the sole reason of Adam's disability. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (U.S. 1986).

The requisite intent for a Section 504 claim has been measured by both a "deliberate indifference" standard and a "gross misjudgment or bad faith" standard. *Kaitlin C.*, 2010 WL 786530 at *6. Here, the evidence in the record permits an inference of intentional discrimination. As noted above, the Court found that the evidence permits a finding that Adam was denied an appropriate education. (Opinion and Order at 5-6). The "evidence suggests that Adam, like the other students at Lourdesmont, was intentionally denied the educational benefits nondisabled children received." *Id.* at 9. Moreover, it was solely because of his disability that he was placed at Lourdesmont,[5] and it was precisely that environment that allegedly allowed Plaintiff's injury to materialize. Whether there was the requisite intent for liability presents a genuine issue of material fact that shall be reserved for the fact finder.

---

[5] The record reflects that Adam's mother felt she had no alternatives in sending Adam to Lourdesmont, and that she would be jailed for truancy if she did not. Maurya C. dep.; Doc. 144-6

Case 3:07-cv-00532-ARC   Document 195   Filed 09/13/11   Page 10 of 17

Contrary to Defendants' allegations, there is sufficient evidence in the record to support the notion that Adam was discriminated against through the services provided to him at Lourdesmont.  In an unrelated motion for reconsideration under Section 504, I considered the same issue as presented here–whether of a failure to provide a free and appropriate education "occurred or was allowed to continue because of the students particular needs . . . i.e. because of their disabilities." *Vicky M. v. Northeastern Educ. Intermediate Unit*, No. 3:06-cv-1898, 2009 WL 4044711, at *5 (M.D. Pa. Nov. 20, 2009).  Specifically, I denied the motion to reconsider where a classroom of students with behavioral problems was allegedly abused by their teacher in attempting to restrain and discipline them.  *Id.* at *2.  There, as here, I considered "whether the evidence presented demonstrated that the Minor-Plaintiff's disabilities were the cause of the denial of benefits," and found material issues remained for trial on the issue of causation.  *Id.* at *5.

Like *Vicky M.*, Plaintiff in the instant case was similarly subjected to a substandard environment for the sole reason that he was disabled.  The fact that Adam was not singled out for such discrimination is immaterial.  No nondisabled student was placed at Lourdesmont, and no evidence suggests that the regular schools in the area were as pervasively dangerous or understaffed as Lourdesmont.

There is sufficient evidence in the record to allow the necessary inference of deliberate indifference or bad faith.  Below is an excerpt from the Magistrate Judge's discussion:

> [T]he environment at Lourdesmont was, in many senses, awful.  Fights occurred daily; students perpetrated violence against each other and against

at 10, Ex. C.

10

teachers, walked out of classes, and damaged school property.  With a maximum of three staff members available to respond to fights, and only one being on duty at times, Lourdesmont had a demonstrated, perpetually inadequate system for crisis management. Other shortcomings at Lourdesmont only compounded these problems: NEIU teachers were forbidden from intervening in fights; teachers and therapists alike had little to no training in defusing students' aggression; and numerous Lourdesmont personnel, including the principal and Adam's primary therapist, were manifestly unqualified for their positions . . . . All students at Lourdesmont were subject to the same woeful educational environment . . . .

(R & R; Doc. 164 at 30–32).  From the facts, a reasonable jury could find that the conditions, provided to Adam on the basis of his disability, were so woefully inadequate as to constitute intentional discrimination.

As stated above, that other children at Lourdesmont may have been denied FAPE is no issue in the instant case.  As my Opinion and Order pointed out, under such reasoning, "a school district could escape liability for discrimination by shipping its disabled students–and only its disabled students–to (say) Riker's Island, so long as the entire group is denied appropriate educations."  (Opinion and Order at 8-9).  This does not ignore the fact that the ultimate injury was in fact caused by another student, but additionally claims that the institution may also share some fault, a question for the factfinder.  As such, whether a denial of FAPE rises to the level of "deliberate indifference" or "gross misjudgment or bad faith" sufficient to constitute intentional discrimination based solely on disability will be left for the jury.

Finally, SSD suggests that Plaintiff has failed to allege any facts that suggest SSD "acted in bad faith, used gross misjudgment or [was] deliberately indifferent to the rights of Adam."  (Doc. 182 at 8).  The Court disagrees.  The record more than indicates woefully

11

substandard conditions.  Moreover, as I have previously indicated, evidence of notice by a school district is not necessary to survive summary judgment.  *Vicky M*, 689 F.Supp.2d at 737 ("Even without direct knowledge of the allegations, [the school district] was on notice that the students needed a safe environment for an appropriate education.").  The extensive record in this case is more than sufficient to be put before a jury.

### D. Gross Negligence Under the Pennsylvania Mental Health Procedures Act

Defendant Lourdesmont argues that as a "partial hospitalization facility" it is entitled to immunity for willful misconduct or gross negligence pursuant to Pennsylvania's Mental Health Procedures Act (MHPA), 50 P.S. § 7114(a).  (Doc. No. 181 at 2).  Defendant's motion for reconsideration fails on this issue as it does not meet the legal standard required for it to be granted.

The Act extends such immunity to "all involuntary treatment of mentally ill persons" and "voluntary inpatient treatment of mentally ill persons."  50 P.S. § 7103.  It is not now contested that, as I found previously, Adam's situation does not constitute involuntary treatment.  (Opinion and Order at 13).  Instead, Lourdesmont effectively argues that as a "partial hospitalization facility," it is providing inpatient services as envisioned by the Act.  (Doc. 183 at 3).  In support of this interpretation, Lourdesmont cites specific regulations by Pennsylvania's Department of Public Welfare with differing meanings of "partial hospitalization."  (Doc. 183 at 3-4) (citing  55 Pa. Code §4210.61).

Defendant's interpretation cannot control.  The regulations cited by Defendant are inapplicable to the immunity section of the MHPA as they apply solely to county Mental

12

Health/Mental Retardation programs.  55 Pa. Code § 4210.2; *see Chartiers Community Mental Health & Retardation Ctr. v. Department of Pub. Welfare*, 696 A.2d 244, 247 (Pa. Commw. Ct. 1997).  Thus, while partial hospitalization may consist of impatient services in certain instances, it does not follow that "voluntary impatient treatment" as envisioned by the Act is synonymous with the partial hospitalization Lourdesmont provides.  In fact, the Act explicitly states that "'Inpatient treatment' shall include all treatment that requires full or part-time residence in a facility."  50 P.S. § 7103; s*ee e.g. Chartiers*, 696 A.2d at 247 (finding "partial hospitalization is not a form of inpatient treatment [as defined under Section 7103] because it does not require 'residence'.").  As Plaintiff does not reside at Lourdesmont, it was not in error for this court to find the Act did not apply to Defendant.

Finally, it should be noted that this is the first instance in which Defendant has raised this particular interpretation and, as noted above, a motion to reconsider is not an appropriate forum to raise new arguments.  Considering the forgoing, the Court's holding that Lourdesmont is not entitled to immunity was not clear error and will not be overturned.

### E. Delegation of Service Agreement

Defendant NEIU contends that the Court "miscomprehends the nature and extent of the obligations delegated under service agreement between the Scranton School District and the NEIU." (Doc. 179 at 4).  In my Opinion and Order, I stated that:

> The NEIU asserts that the responsibility for providing Adam with an appropriate education rested with Scranton School District. (*See* Statement of Facts; Doc. 126-5 at ¶ 2). However, the plaintiffs assert that NEIU is co-responsible for the provision of an appropriate education and provides evidence that NEIU was responsible for writing and implementing Adam's individualized education

13

program. (*See* Contract at 6; Doc. 144-27, Ex. X.) *Whether discrimination existed, and which (if any) defendant was responsible, are questions for the trier of fact and cannot be resolved on summary judgment.*

(Opinion and Order at 10 n.8) (emphasis added).

Defendant argues that the primary responsibility for providing FAPE rests with the school district rather than the intermediate unit.  (Doc. 179 at 10-11).  However, as I have held before, and contrary to Defendant's assertions, "both the school district and the intermediate unit can be jointly responsible for the free and appropriate education of the Minor-Plaintiffs."  *Vicky M.*, 689 F. Supp. 2d at 736.  This being the case, the allocation of responsibility is ultimately a question of fact that shall be left to the jury.

Defendant NEIU further argues that the record fails to show that the alleged discrimination was proximately caused by defendant's implementation of Adam's educational program.  (Doc. 179 at 12).  Specifically, Defendant contests responsibility for the specific incident that led to Adam's injuries: "In sum, Plaintiffs fail to establish any connection at all between the classroom fight and any activity or omission on the part of the NEIU."  (Doc. 179 at 13).  This ignores potential systemic shortcomings that proximately contributed to Plaintiff's injuries, for which there is support in the extensive record.  *See generally*, Krieg Report; Doc. 144-23 at 19 ("Adam . . . was denied FAPE in the LRE due to inappropriate evaluations, programs and placement because of [Defendants'] procedural and substantial failings under . . . Section 504 of the Rehabilitation act of 1973").  In fact, it appears that NEIU was intimately involved in the day-to-day affairs at Lourdesmont:

The NEIU is responsible for educating the clients and providing any related services that go with that.  If there's speech therapy or occupational therapy or

14

any of those, they do the paperwork. They have the responsibility for curriculum development, for training the teachers, for staffing the classrooms, designing the structure of the educational services, if there's going to be team teaching or however they would want that to run.

(Neri Dep. 38:21–39:15; Doc. 130-6, at 4).

As noted above, delineating responsibility between the Defendants is a complex factual determination that will be ultimately required in the instant dispute.  In fact, there is apparently no written document that specifies the division of responsibilities between Lourdesmont and NEIU.  Lourdesmont Corp Des. Dep.; Doc 144-10 at 10-11, Ex. G; NEIU Corp. Des. Dep.; Doc. 144-16 at 1, Ex. M.

The record contains many facts about Defendant NEIU's involvement at Lourdesmont that are best resolved by a jury.  NEIU did not develop a functional behavior assessment of Adam in conjunction with his IEP, nor included a Behavior Management Plan separate from the therapeutic protocol.  NEIU Resp. Pls.' Admissions; Doc. 144-26 at 4-5, Ex. W.  NEIU was on notice that Adam had shortcomings in social skills, anger management, conflict resolution, and interpersonal skills.  Grace dep.; Doc 144-3 at 11, Ex. A.  There was only one NEIU teacher supervisor at Lourdesmont, present only two half-days per week.  Fallon Dep.; Doc. 144-18 at 1-2, Ex. O.  Janice McDonald, an employee of Defendant NEIU, was present at the altercation causing Plaintiff's injury but was not trained in behavioral strategies to help implement IEPs, or in the use of restraints.  McDonald Dep.; Apr. 3, 2009, Doc. 130-10 at 2-9; McDonald Dep. 27:21-28:23; Doc. 144-8, at 4-5.  In fact, NEIU staff was not authorized to intervene in fights, nor had McDonald received training in implementing IEPs or deescalating fights.  McDonald dep.; Doc 144-8 at 20, 27-28, Ex. E.

15

Thus, contrary to Defendant's assertion, there is sufficient evidence for a jury to find that Defendant's failure to properly implement Plaintiff's IEP contributed to the April 27 incident.  The record is complete with reports of inadequate training and hindering policies that potentially created a foreseeable risk to students precisely in Plaintiff's position.  As Defendant NEIU's institutional policies and procedures are at direct issue in this case, and as Defendant was intimately involved with the proceedings at Lourdesmont, my initial determination that allocation of responsibility should be left to the trier of fact was not in clear error and will not be disturbed.

### III. Conclusion

For the reasons explained above, all Motions to Reconsider will be denied.  An appropriate order follows.


  September 13, 2011                         /s/ A. Richard Caputo

Date                                     A. Richard Caputo
                                         United States District Judge

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ADAM C., et al.,

Plaintiffs,                                    NO. 3:07-CV-532

v.

SCRANTON SCHOOL DISTRICT, et al.,              (JUDGE CAPUTO)

Defendants.

## ORDER

**NOW**, this 13th day of September, 2011, **IT IS HEREBY ORDERED** all motions to reconsider will be denied (Docs. 176, 178, 180, 181).


/s/ A. Richard Caputo

A. Richard Caputo
United States District Judge